# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID P.P.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al.,<br><br>Respondents. | Case No. 1:26-cv-03102-KES-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND IMMEDIATELY RELEASE PETITIONER<br><br>(ECF No. 21) |

Petitioner is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who was paroled into the United States on or about December 28, 1995. On February 2, 1999, an immigration judge ("IJ") ordered Petitioner removed from the United States to Cuba. (ECF No. 13-1 at 5, 8, 16.[2]) On or about May 4, 1999, Petitioner was placed on an Order of Supervision ("OSUP"). (ECF No. 13-1 at 2.)

Petitioner has an extensive criminal history with convictions for burglary, drug possession, larceny, and possession of a stolen vehicle. (ECF No. 13-1 at 2, 6–7, 10–14.) On July

[1] The Court partially redacts Petitioner's name to mitigate privacy concerns, as requested by Petitioner and recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

16, 2025, U.S. Immigration and Customs Enforcement ("ICE") encountered Petitioner while he was in the custody of the Las Vegas Police Department and booked into Clark County Detention Center. Upon his release, Petitioner was placed into immigration custody on or about November 9, 2026. (ECF No. 13-1 at 6.)

Department of Homeland Security records establish that Cuba has denied repatriation. (ECF No. 13-1 at 2.) On November 17, 2025, January 29, 2026, and April 8, 2026, Petitioner was notified of ICE's intent to remove him to Mexico. Petitioner refused to sign the notices and refused to cooperate with the removal process. (Id. at 3, 18, 19, 23, 30.) On March 11, 2026, Petitioner was served with a Notice of Failure to Comply, which he refused to sign. (Id. at 25–26.) On April 7, 2026, petitioner was served with a Warning for Failure to Depart, which he refused to sign. (Id. at 28–29.)

On April 23, 2026, Petitioner filed a pro se petition raising a prolonged detention due process claim. (ECF No. 1.) On June 26, 2026, Respondents filed an answer, stating that Petitioner is subject to an administratively final order of removal and detained pursuant to discretionary detention authority under 8 U.S.C. § 1231(a)(6), Cuba has denied repatriation, and Petitioner is subject to processing for removal to Mexico as a third country removal. (ECF No. 13.) On June 30, 2026, the Court appointed counsel for Petitioner. (ECF No. 15.) On July 31, 2026, the Court ordered additional briefing on the issue of Petitioner's possible third-country removal to Mexico. (ECF No. 19.) On August 13, 2026, Petitioner filed a traverse addressing the issue and a first amended petition ("FAP"). (ECF Nos. 20, 21.) On August 17, 2026, the Court construed the FAP as including a motion to amend and ordered Respondents to file a response to the motion to amend. (ECF No. 22.) On August 24, 2026, Respondents stated that they do not oppose the motion to amend. (ECF No. 23.) On August 25, 2026, the Court granted the motion to amend. (ECF No. 24.) On September 14, 2026, Respondents filed a response to the FAP. (ECF No. 25.)

///

///

///

## II.

## DISCUSSION

In the FAP, Petitioner challenges his continued detention on due process grounds. (ECF No. 21 at 14.) In the response, Respondents argue that Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6) and his detention is constitutional. (ECF No. 13 at 3–5.)

### A. Zadvydas

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Avilez, 69 F.4th at 530–31. "After entry of a final removal order and during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
> > "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated

countries refused to accept them, challenged their prolonged detention under § 1231(a)(6). Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Respondents argue that Petitioner bears the burden to demonstrate a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future under Zadvydas and "Petitioner has made no argument that his removal is not reasonably foreseeable. Petitioner has not shown that Mexico will not accept him or that his removal is barred by any law." (ECF No. 13 at 4.) "However, the burden-shifting framework from *Zadvydas* does not apply here" because "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*" but rather "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (internal quotation marks omitted) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

**B. Likelihood of Removal**

"The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed." Yan-Ling X., 813 F. Supp. 3d at 1163 (citing Nguyen, 788 F. Supp. 3d at 149; Escalante, 2025 WL 2206113, at *3). "A non-citizen subject to a final order of removal who is released on OSUP may be re-detained 'if, on account of changed circumstances, the Service determines [ ] there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" Huang v. Albarran, 818 F. Supp. 3d 1154, 1162 (E.D. Cal. 2026) (alteration in original) (quoting 8 C.F.R. § 241.13(i)(2)). "On numerous occasions, this Court has found that under 8 C.F.R. § 241.13(i)(2), when ICE revokes the release of a noncitizen who has been ordered removed to effectuate their removal, it is ICE's burden to show a significant likelihood of removal." Id. at 1160–61. "The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur. Evidence that 'there is at least some possibility that' the designated country of removal 'will accept Petitioner at some point ... is not the same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future.'" Yan-Ling X., 813 F. Supp. 3d at 1164 (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)).

Respondents contend that "if Petitioner were to cooperate, ERO could facilitate his removal within three-to-four days to Mexico, which would not need a travel document" and therefore, "even if Petitioner did demonstrate a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, Respondent's evidence has rebutted it." (ECF No. 13 at 4.) "As this Court and other judges in this District have pointed out, though DHS may have an informal arrangement with the Mexican government to allow third country removals to Mexico, Mexico only accepts individuals who consent to be removed there." Pedro V.L. v. Warden, No. 1:26-CV-05261-JLT-EGC (HC), 2026 WL 2607611, at *1 (E.D. Cal. Sept. 3, 2026) (emphasis in original). Therefore, "removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal." Ramirez Outerino v. Warden, Mesa Verde ICE Processing Ctr., No. 1:26-CV-05326-DJC-JDP, 2026 WL 2327873, at *2 n.1 (E.D. Cal. Aug. 11, 2026). Here, as Respondents

concede, "Petitioner has repeatedly refused to cooperate with his removal process" to Mexico. (ECF No. 13 at 4.) Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future.

> The record is devoid of any evidence suggesting Mexico will accept Petitioner in the absence of his consent, and Petitioner's repeated refusal to cooperate with his removal to Mexico evidences his non-consent. Therefore, even assuming the traditional burden shifting framework from *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001), applies, the facts here satisfy Petitioner's burden to show there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents fail to rebut that showing.

Pedro V.L., 2026 WL 2607611, at *1.

Based on the foregoing, the Court recommends finding that Petitioner is entitled to habeas relief and immediate release. See B.D. v. U.S. Att'y Gen., No. 1:26-CV-05510-KES-EGC (HC), 2026 WL 2546626, at *1 (E.D. Cal. Aug. 28, 2026) (noting that "numerous district courts have held that when a petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may [not] be detained indefinitely" and ordering immediate release of petitioner where it "has been more than a year since petitioner was taken back into ICE custody, eight months since ICE tried to remove petitioner to Cuba, and seven months since ICE identified Mexico as a third country for petitioner's removal" (internal quotation marks and citation omitted)).

## III.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The first amended petition for writ of habeas corpus (ECF No. 21) be GRANTED;
2. Petitioner be immediately released under appropriate conditions of release; and
3. Respondents be enjoined from re-detaining Petitioner pursuant unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 28, 2026**

STANLEY A. BOONE
United States Magistrate Judge